In the Matter of BUFFALO SEWER AUTHORITY et al., Respondents, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Appellants, and PROVINCE OF ONTARIO et al., Intervenors-Appellants.

Third Department, October 26, 1989

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Maria Semidei-Otero, Peter H. Schiff* and *Douglas H. Ward* of counsel), for appellants.

*Pepe & Hazard (Michael Zizka* and *Jean E. Perry* of counsel), and *Samuel F. Houston, Corporation Counsel (Michael B. Risman* of counsel), for Buffalo Sewer Authority, respondent.

*Whiteman, Osterman & Hanna (Philip H. Dixon* of counsel), for Industrial Liaison Committee of the Niagara Falls Area Chamber of Commerce and others, respondents.

*Terris, Edgecombe, Hecker & Wayne (Bruce Terris* and *James M. Hecker* of counsel), for intervenors-appellants.

## OPINION OF THE COURT

WEISS, J. P.

On March 10, 1987, respondent Department of Environmental Conservation (hereinafter DEC) promulgated an amendment to one of its regulations (6 NYCRR 754.1 [a] [5]) which would affect DEC's authority to establish effluent limits for all discharges from publicly owned sewage treatment works based upon the treatment capability of a particular plant. Specifically, the proposed amendment would give DEC explicit authority to include in a State pollutant discharge elimination system (hereinafter SPDES) permit technology-based effluent limitations necessary to meet the degree of treatment capability of a municipal treatment plant, consistent with prudent engineering. Notice of the proposed amendment was published in the State Register on March 25, 1987, together with a regulatory impact statement and notice of a public hearing to be held April 24, 1987. On March 10, 1987, DEC had issued a negative declaration under the State Environmental Quality Review Act (ECL 8-0101 *et seq.)* and also determined that a regulatory flexibility analysis (State Administrative Procedure Act § 202-b) was not required because the regulation applies only to municipally owned sewage treatment plants.

Pursuant to ECL article 5, DEC must submit any environmental standard, criterion, rule, regulation or change thereto to the State Environmental Board (hereinafter Board) for its approval.* The amendment at issue in this case was on the agenda for the Board's April 27, 1987 meeting, and although

---

* The Board consists of 16 members including the Commissioners of Environmental Conservation, Health, Agriculture and Markets, Commerce, Transportation, Parks and Recreation, the Secretary of State, the Chairman

all other documents mentioned were provided Board members as background materials, the report of the Administrative Law Judge (hereinafter ALJ) of the April 24, 1987 hearing was not included. That report contained the comments by the ALJ, a full transcript of the hearing and a copy of all written submissions. Consideration of the amendment was tabled and, at the next Board meeting on June 15, 1987, a quorum was lacking. On July 22, 1987, DEC filed a certificate with the Secretary of State stating that the amendment had been deemed approved by operation of law on June 26, 1987 because of the failure of the Board to approve or deny it within 60 days after receipt of a full statement of the submitted matter *(see,* ECL 5-0107 [2]).

Petitioner Buffalo Sewer Authority, a public sewer authority, discharges treated wastewater into the Niagara River under a SPDES permit, commenced this CPLR article 78 proceeding to have the amendment annulled, alleging as grounds for such annulment both a violation of procedural requirements in its adoption as well as DEC's lack of authority to enact the amendment. Petitioner Industrial Liaison Committee of the Niagara Falls Area Chamber of Commerce, together with two of its member industrial corporations and petitioner City of Niagara Falls, commenced a separate article 78 proceeding seeking the same relief. The two proceedings were consolidated. Thereafter, the Province of Ontario, Canada, and its Ministry of the Environment were granted permission to intervene in support of DEC. Supreme Court ultimately granted the petitions and annulled the amendment. Both DEC and the intervenors have appealed.

We affirm. The parties agree that all regulations promulgated by DEC must first be approved by the Board *(see,* ECL 3-0301 [2]; 5-0107 [2]; *People v Macellaro,* 131 AD2d 699, 700-701, *lv denied* 70 NY2d 801; *Matter of Washington County Cease v Persico,* 99 AD2d 321, 328, *affd* 64 NY2d 923). When a regulation is presented for approval, the Board must render a decision within "sixty days after receipt of a *full statement* of such submitted matter" (ECL 5-0107 [2] [emphasis supplied]). In the event the Board fails to meet this time limitation, the regulation is deemed approved by operation of law (ECL 5-0107 [2]). The dispositive question before us concerns the triggering of the 60-day time limitation.

of the Public Service Commission, the Commissioner of the State Energy Office and other gubernatorial appointees (ECL 5-0101).

DEC urges that the 60-day period was triggered by the presentation of the full text of the proposed regulation at the April 27, 1987 Board meeting. DEC maintains that the submission of further material is simply a discretionary matter for the Executive Secretary of the Board. This argument flows from article VI of the Board's bylaws, which in pertinent part read as follows:

"VI. NOTICE OF MEETINGS

"The executive secretary shall provide each member of the Board with written notice at least thirty days prior to each meeting of the time, place and purpose of such meeting and with copies of all proposed standards, criteria, and rules and regulations which are to be voted on by the Board at that meeting. The *notice shall be accompanied with such background information as the executive secretary determines may assist* the *members in considering the proposals, including* the names of appropriate Department personnel knowledgeable about the proposals, *and including* the Environmental Impact Statement, Regulatory Impact Statement, Department Staff responsive documents, *and Administrative Law Judge's Hearing Report.* Department personnel shall provide reasonable additional information upon request from a Board member" (emphasis supplied).

In our view, DEC's construction of this procedural provision directly contravenes both the statutory predicate and the actual bylaw language. As indicated, the Board must first be given a "full statement" of a proposed regulation before the procedural guideline is triggered (ECL 5-0107 [2]). Considering the language utilized and the underlying statutory objective *(see, Ferres v City of New Rochelle,* 68 NY2d 446, 451; *Matter of Van Patten v La Porta,* 148 AD2d 858, 859-860), we find that the underscored phrase plainly anticipates a complete informational package, including the ALJ's hearing report, and not simply the text of a proposal. This construction is consistent with the Board's status as a consultative body *(see,* ECL 5-0107 [1]). Common sense dictates that unless fully informed on a proposal, the Board cannot function in a meaningful capacity.

Our reading of article VI of the bylaws does not compel a contrary conclusion. The word "including" appears twice in the second sentence of this provision and may properly be construed as conferring discretion on the Board's Executive Secretary in providing the names of involved personnel but

otherwise requiring the submission of the subsequently identified documents. To hold otherwise would authorize the Executive Secretary to withhold potentially dispositive documents, an authority that could emasculate the Board's approval power and, concomitantly, undermine the legislative objective of procuring the Board's expertise. While we generally defer to an agency's interpretations of its own regulations, we are not bound by a construction that contradicts the governing statute (see, Matter of New York State Superfund Coalition v New York State Dept. of Envtl. Conservation, 144 AD2d 72, 76).

Since DEC failed to submit the hearing report to the Board, the 60-day approval provision was never triggered. As such, the regulatory amendment was properly annulled by Supreme Court.

YESAWICH, JR., MERCURE and HARVEY, JJ., concur.

Judgment affirmed, without costs.