■ In the Matter of TERRY D., a Person Alleged to be a Juvenile Delinquent, Respondent.—Order, Family Court, New York County (Leah Ruth Marks, J.), entered March 6, 1991, which only conditionally granted the motion of appellants non-party witnesses, the New York City Board of Education and Linda Marks, Assistant Principal of Louis Brandeis High School, to quash a subpoena duces tecum served upon them in this Family Court Act article 3 juvenile delinquency proceeding, affirmed, without costs. Rosenberger and Wallach, JJ., concur, each in a separate memorandum, in both of which Murphy, P. J., concurs; Carro and Ross, JJ., dissent in a memorandum by Carro, J., all as follows:

Rosenberger, J. (concurring). I concur in the result, which affirms the Family Court order partially granting the motion to quash a subpoena duces tecum. The first part of the Family Court's order states "[t]he names and other identifying information need not be provided" if the person to whom the subpoena was directed "is willing to produce the persons whose names were requested by respondent at a time and place to be chosen together by [respondent's attorney] and [the person to whom the subpoena was directed]". Although, as the dissent observes, the parties to this appeal have not supplied any statutory or case authority for this portion of the order, that is not, per se, a reason to reverse it. No statutory or case authority has been submitted showing this portion of the order to have been an improper exercise of the court's discretion or jurisdiction.

The dissent notes that compliance with the order to produce the people who were present would require the recipient of the subpoena "to conduct her own investigation, to identify and locate all such persons who might come within the compass of the subpoena, and then to produce them for interviews". In my view, this ignores the setting in which the original incident took place. It took place in a classroom, while class was in session. It should not require any great deal of effort to have the students who were in that classroom at the time brought together in the classroom again for the purpose of being interviewed. Obviously, the good faith efforts of the recipient of the subpoena to comply with that portion of the order would be sufficient to avoid contempt.

In light of this, an extended discussion of the confidentiality of addresses and telephone numbers of students is unnecessary.

Wallach, J. (concurring). The presentment agency filed a juvenile delinquency petition against respondent for acts committed in the classroom of the complaining witness teacher. Without specifying the basis therefor, respondent served a subpoena on the Assistant Principal demanding "names, addresses and telephone numbers for each student and nonstudents who were in the classroom" at the time in question. When no answer was received, respondent, contending that the information demanded was necessary to discover witnesses to the events charged in the proceeding, sought and obtained an order directing the Assistant Principal to show cause why she should not be held in contempt. A cross motion to quash was filed. The court denied the motion to quash unless the Assistant Principal agreed to produce the named persons at a mutually selected time and place, in which event she need not provide the names and other identifying information. Otherwise, the Assistant Principal was "directed to produce the information as to names and telephone numbers or times the children can be brought to answer a telephone at school."

While a subpoena may not be utilized to obtain information where there is no demonstration of relevancy or materiality, and the evidence sought "would not directly bear on the hard issue of guilt or innocence" *(People v Gissendanner,* 48 NY2d 543, 550), the information sought here is necessary to locate eyewitnesses to the alleged crime, and thus bears directly on the issue of guilt or innocence. The subpoena is not being used for general discovery purposes, or "an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable [respondent] to impeach the witness" *(People v Gissendanner, supra,* at 549).

Furthermore, I differ with the view of my dissenting colleagues that the confidentiality provisions of Education Law § 3212-a create an insuperable bar to the enforcement of this subpoena. In the City of New York, the pertinent provisions of the Family Educational Rights and Privacy Act (FERPA; 20 USC § 1232g [commonly referred to as the Buckley Amendment]) are incorporated into the regulations of the schools' Chancellor by release No. A-820, issued October 1, 1979. Those regulations provide that "[i]t is the responsibility of each school to preserve the rights of privacy of all students and parents," and that under the policies of FERPA and the Board of Education, parents have the right to control disclosure from

a child's education records, with certain exceptions *(see,* 20 USC § 1232g [b] [2]). However, the Buckley Amendment, although imposing broad confidentiality requirements for student records, carves out a significant exception by allowing conditional disclosure of " 'directory information' " (20 USC § 1232g [a] [5]), which includes the student's name, address and telephone listing, the very items sought here.

Contrary to the dissent, there is no suggestion here that these provisions have been complied with, nor is it urged that the Chancellor's regulations can alter a statute. Rather, those regulations are cited simply to indicate the relatively modest privacy interest which is implicated here.

But, even assuming the confidentiality policy of the Education Law were cast in the most absolute terms, this could not defeat respondent's rights to compliance, which are of constitutional and due process dimensions. As was cogently stated in *People v Heller* (126 Misc 2d 575, 577), "The rights to compulsory process and to confrontation of witnesses are basic to our system of justice. The Supreme Court has recognized its 'manifest duty * * * to vindicate those guarantees' *(United States v Nixon,* 418 US 683, 711 [1974]). The landmark cases of *Brady v Maryland* [373 US 83 (1963)], and *Giglio v United States* (405 US 150 [1972]) underscore the rights of criminal defendants to discover exculpatory evidence in the possession of the prosecution. The duty of the prosecuting authority to comply is an affirmative one *(United States v Agurs,* 427 US 97 [1976]), grounded in considerations of 'elemental fairness to the defendant and as a matter of professional responsibility' *(People v Cowart,* NYLJ, Jan. 29, 1982, p 7, col 2 [Supreme Ct, Bronx County, Bernstein, J.]). *When those guaranteed rights are in direct conflict with a policy of another governmental authority, one must yield. It is the opinion of this court that, in this case, the rights of those competing authority must yield to those of the defendant."* (Emphasis added.)

Carro, J. (dissenting). Respondent was charged with juvenile delinquency on the basis of a complaint that he entered a high school teacher's classroom without authorization, prevented her from leaving, and assaulted her in front of approximately 40 students and an unspecified number of school personnel. The respondent served the appellants Board of Education and Linda Marks, an Assistant Principal of the high school, with a subpoena duces tecum demanding the "names, addresses and telephone numbers for each student and nonstudents who were in the classroom when the incident occurred." When the appellants did not comply, a motion to hold them in contempt

and a cross-motion to quash the subpoena were disposed of in a decision and order as follows: "Motion to quash partially granted. If Linda Marks is willing to produce the persons whose names were requested by respondent at a time and place to be chosen together by Mr. Tatem [respondent's attorney] and Ms. Marks, the names and other identifying information need not be provided. If such an arrangement is not acceptable to Ms. Marks, the motion to quash is denied and Ms. Marks is directed to produce the information as to names and telephone numbers or times the children can be brought to answer a telephone at school."

Education Law § 3212-a (1) provides as here pertinent that "[e]ach school shall maintain a record of the telephone number of each pupil enrolled in the school * * * [which record] shall, except as otherwise provided by law, be accessible solely for emergency purposes." Clearly, release of the students' telephone numbers to provide the respondent with leads as to potential defense witnesses was not within the contemplation of the statute. At minimum, the respondent was required to provide " 'some basis' " to the court for believing that the appellants were in possession of information that would lead to exculpatory material *(People v Andre W.,* 44 NY2d 179, 184). This test "certainly contemplates more than purely subjective assertion of a defendant's desire for information" *(supra,* at 185).

Respondent asserts herein that his "sole purpose in requesting such information is to locate each witness and subpoena him or her to appear in court to testify as to the incident in question and to what each person observed. The respondent asserts that the witnesses, student and employees were present during the incident and the testimony of these potential witnesses will prove his innocence at trial." This conclusional and subjective assertion fails to provide a sufficient basis for invasion of the students' privacy rights by revealing information that the Education Law expressly provides shall be used only for "emergency purposes."

In general, a subpoena duces tecum is not to be used for discovery or to ascertain the existence of evidence *(People v Gissendanner,* 48 NY2d 543, 551; *People v Marin,* 86 AD2d 40, 48). Its purpose is to direct an individual (or entity) to produce books, documents, papers or other items in his or her possession as a basis for testimony relevant to the matter under inquiry *(People v Coleman,* 75 Misc 2d 1090; CPL 610.10 [3]; CPLR 2307). The Legislature has spelled out the terms of discovery available in a juvenile delinquency proceeding, in

Family Court Act §§ 330.1 through 335.2. The list of students and nonstudents sought in the subpoena, or anything of similar purport, is not among the items listed in the statute; and a subpoena duces tecum may not be used to circumvent those discovery provisions *(Matter of Constantine v Leto,* 157 AD2d 376, 378, *affd for reasons stated* 77 NY2d 975).

Even if the names, addresses and telephone numbers of the students *were* the appropriate subject of a subpoena duces tecum, which is not the case *(Glotzer v City of New York,* 173 Misc 829), in view of the confidentiality provision of Education Law § 3212-a, it would nevertheless have been an abuse of discretion for the court to direct production of this information in the absence of a showing by respondent of the efforts, if any, made to obtain the information by other means, and the alternative unavailability of such information *(Leef v Evers,* 88 Misc 2d 178, *revg* 81 Misc 2d 518).

The alternative direction in the order appealed from, directing that Ms. Marks produce the persons referred to in the subpoena, apparently for purposes of being interviewed by respondent's attorney, appears to be unsupported by any statutory or case authority. It would require Ms. Marks to conduct her own investigation to identify and locate all such persons who might come within the compass of the subpoena, and then to produce them for interviews, presumably through the exercise of whatever supervisory or disciplinary authority she possesses over those persons by virtue of her official position as an assistant high school principal. I cannot conceive of any legal basis for directing such an unconventional implementation of supervisory authority absent compelling circumstances, which are surely not present in this case. Accordingly, the cross motion to quash the subpoena duces tecum should have been granted.

The majority's reliance upon 20 USC § 1232g (a) (5) (A) as purportedly authorizing the release of the students' names, addresses and telephone numbers to the accused assaulter of their teacher, is misplaced. Aside from the obvious fact that Congress did not have anything like the within situation in mind when drafting a code of student privacy rights, the majority has omitted reference to section 1232g (a) (5) (B), which sets forth the conditions for the release of "directory information": "(B) Any educational agency or institution making public directory information shall give public notice of the categories of information which it has designated as such information with respect to each student attending the institution or agency and shall allow a reasonable period of time

after such notice has been given for a parent to inform the institution or agency that any or all of the information designated should not be released without the parent's prior consent."

Contrary to the majority's assertion, section 1232g (a) (5) (A) does not allow disclosure of "directory information", but merely defines the term; and section 1232g (a) (5) (B) allows public release of directory information only after compliance with notice requirements giving parents the option to withhold consent to the release of that information. Nothing in the order appealed from, and nothing in the record, demonstrates or even suggests compliance with the Buckley Amendment.

Even if the Buckley Amendment provisions were reasonably construed to permit release of the students' names, addresses and telephone numbers in connection with respondent's fishing expedition for witnesses, the majority concedes that those provisions were incorporated into the regulations of the schools' Chancellor by release No. A-820, issued October 1, 1979. Regulations adopted by an executive or administrative agency that are inconsistent with a statute passed by the Legislature, are void and unenforceable *(Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 593; *Matter of CoData Corp. v Commissioner of Taxation & Fin.,* 163 AD2d 755; *Matter of Buffalo Sewer Auth. v New York State Dept. of Envtl. Conservation,* 151 AD2d 95, 99).

In any event, the Buckley Amendment only undertakes to set forth certain rules which must be complied with by an educational agency or institution as a condition for the receipt of Federal funds. The notion that Federal funds might be denied to the New York City Board of Education because it did not turn over to the alleged assaulter the names, addresses and telephone numbers of student witnesses to the alleged assault, is not even suggested as an issue by the respondent.

With respect to the language that the majority quotes from *People v Heller* (126 Misc 2d 575), I have no quarrel with it. But the factual context giving rise to that quotation is completely distinguishable from the facts presented herein. In *Heller,* the U.S. Attorney moved to quash a subpoena duces tecum seeking to discover the terms of an immunity agreement under which a coconspirator of the defendant agreed to testify against the defendant—information clearly subject to discovery under *Brady v Maryland* (373 US 83) as having a direct bearing on the reliability of a specific witness whose

testimony would be crucial in deciding that defendant's guilt or innocence.

Significantly, the court in *Heller* recognized that "the power of the subpoena may not be used indiscriminately, permitting the defendant to conduct a 'fishing expedition' in Government files." (126 Misc 2d, *supra,* at 578.) In stark contrast to the *Heller* case, the respondent herein is engaging in a blatant fishing expedition, which incidentally violates privacy rights specifically granted to school children by the Education Law. *People v Heller* is surely no authority for affirmance of the order appealed from.

[The unpublished Decision and Order of this Court entered on March 24, 1992 is hereby recalled and vacated.]